1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8
9

10   JORDAN S. BRINAR, an individual; and
     JASON S. BRINAR and BRANDEN L.
11   BRINAR, husband and wife,

12                          Plaintiffs,

13           v.

14   BETHEL SCHOOL DISTRICT NO. 403,

15                          Defendant.

CASE NO. C 10-5454 KLS

ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

16
17           This matter comes before the Court on Bethel School District's Motion for Summary

18   Judgment to dismiss all of Plaintiffs claims. ECF No. 17.  The Plaintiffs claim that the conduct of

19   the Defendant School District violated Jordan Brinar's Fourth Amendment right to be free from

20   an unlawful seizure of his person and that the District violated the Plaintiffs Fifth and Fourteenth

21   Amendment rights to privacy and due process of law, all in violation of 18 U.S.C. § 1983.

22   In addition, the Plaintiffs asserts claims of (1) intentional and negligent infliction of emotional

23   distress; (2) defamation; (3) false or illegal arrest; and (4) personal injury.

24

1 | **UNDISPUTED FACTS**

2 | **Incident that Lead to Arrest:**

3 |     On March 27, 2008 an explosive device was detonated at Bethel High School.  Pierce

4 | County Sheriff Deputy Ken Board was at the high school that day and he began an investigation

5 | into the incident.  According to Assistant Principal Susan Mayne, the District's immediate

6 | concern was whether there were any additional explosive devices in the school or the school

7 | area.  Pierce County Sheriff Detectives, Campus Safety and Ms. Maine began searching the high

8 | school for additional devices.  They swept the school lockers, school grounds, portables, and all

9 | outer buildings, including the stadium for any additional devices.  A second, undetonated,

10 | explosive device was found in the area near where the first device exploded.

11 |     Following the explosion, the school was placed on lock down.  The lock down permitted

12 | students to move from classroom to classroom but they were not permitted to leave the school

13 | grounds.  The Principal of Bethel High School, Wanda Riley, made an all-school announcement

14 | regarding the explosion and asked that anyone with information come forward.  As information

15 | became available, it was provided to the Pierce County Sheriff's Deputies who were present on

16 | the campus.  The Sheriff's Deputies conducted all of the interviews of the students, including

17 | that of the plaintiff Jordan Brinar.

18 |     Jordan Brinar did not hear the first school announcement made by the principal but he did

19 | hear a second one, which he believes occurred during the third period or around 9:00 a.m.  This

20 | announcement again requested students to come forward if they knew anything.  Jordan did not

21 | respond to this request because he was "scared" and "freaked out at the whole situation."  Jordan

22 | testified that he did not think that "anybody would actually do that on school grounds."  ECF No.

23 | 18, p. 28 – 31, Deposition of Jordan Brinar.

24 |

1    Shortly following the announcement that Jordan heard, a school security officer came to

2  Jordan in his classroom, asked him to come with him and led him out into the hall at which time

3  a police officer "tells me to get against the wall and then he arrests me." *Id.* at p. 33.  Following

4  his arrest, Jordan was taken by the police officer to the office of Susan Mayne, the assistant

5  principal.  The officer left Jordan in the office handcuffed to a chair.   Once he was handcuffed to

6  the chair, Susan Mayne left her office.  She did not say anything to Jordan.  While the record is

7  not precisely clear, it does appear that Ms. Mayne may have returned to her office on several

8  occasions to get things out of her office but other than that only a police officer was in the room

9  with Jordan.  *Id.* at p. 36.  Shortly after he was placed in Susan Mayne's office another police

10  officer came into the office and questioned Jordan for 25 to 30 minutes.  Jordan was then

11  transported to Remann Hall in a police vehicle.  He was initially detained at Remann Hall but

12  then was subsequently released to his parents on electronic home monitoring.

13    According to Ms. Mayne, her involvement and the involvement of the school

14  administrators "was limited to following the direction of law enforcement, providing information

15  when questioned, and requesting students to provide information to law enforcement."  ECF No.

16  15.  Dec. of Susan Mayne.  With regard to Jordan Brinar specifically, the School District's

17  involvement consisted of "assisting the officers in removing Jordan from his class and bringing

18  him to the office."  *Id.*  Jordan Brinar was not questioned by any school officials.

19    It is undisputed that the Deputies directed the school administrators to not contact the

20  parents as the Deputies said they would make the contact at the appropriate time.  It was also the

21  understanding of District officials that at least part of the reason for this request was that the

22  Sheriffs' department was obtaining search warrants for the individual homes to search for

23  additional evidence.  According to Susan Mayne, Deputy Board did talk to Mr. and Mrs. Brinar

24  about 4:30 p.m. that day.

1    As a result of Jordan's involvement in this incident, he was emergency expelled and

2 ultimately expelled from Bethel High School for one year.  Jordan appealed the expulsion and

3 the appeal was resolved by reducing the penalty to a long-term suspension with Jordan

4 transferring to the Yelm School District.

5    Jordan Brinar was charged with Unlawful Manufacture, Sale, or Offer to Sell Explosives

6 in violation of R.C.W. 70.74.022(1).  On May 16, 2008 Jordan Brinar entered into a deferred

7 prosecution and he was found guilty of the charge.  Jordan Brinar successfully completed the

8 requirements of the deferred prosecution and the charge was subsequently dismissed, with

9 prejudice, on August 15, 2008.  ECF No. 21, p. 24 – 30.

10    Jordan Brinar admitted to providing Works toilet bowl cleaner which was a component of

11 what has been referred to as a Works bomb.  He gave the cleaner to Jeffrey, a fellow student.

12 Jordan asked Jeffry to give it to Bryce.  Instead, Jeffrey apparently put the Works bomb together,

13 threw the bottle and a couple minutes later is exploded.  After the explosion Jordan left the scene

14 and went to class "because I wanted no part of it."  ECF No. 18, p. 28.

15    During the time that he was being questioned by the police, Jordan asked to speak to his

16 parents three times.  He states that he made this request in front of Susan Mayne as well as the

17 police officer.  He requests were denied.  ECF No. 21, p. 22. Declaration of Jordan Brinar.

18 **Facts Supporting Additional Claims:**

19    Jordan was initially expelled from Bethel High School for a year and, as noted above, he

20 appealed that expulsion.  In August 2008 the District and the Brinars entered into an agreement

21 in which the District changed the discipline from an expulsion to a short-term expulsion.  In

22 exchange, the Brinars agreed to withdraw their appeal and their request for a hearing pending

23 Jordan's successful transfer to the Yelm School District.  ECF No. 18, p. 11, 14 – 16.  Jordan

24 was admitted to the Yelm School District in September 2008.  ECF No. 18, p. 44.

1    Following his expulsion from Bethel High School, Jordan enrolled in the Bethel Online

2   Academy on May 14, 2008.  ECF No. 21, p. 15.  According to Branden Brinar, she "continually

3   struggled to obtain any help from Bethel School District to award Jordan's credits for the work

4   he did during the online program.  Not until Jordan's senior year at Yelm High School did Jordan

5   finally receive all of his class credits from Bethel so that he could graduate with his senior class."

6   ECF No. 21, p. 34, Declaration of Branden Brinar.   Jordan did graduate from Yelm High School

7   on time with his senior class.

8                                **SUMMARY JUDGMENT STANDARD**

9       A court will grant summary judgment if "the pleadings, the discovery and disclosure

10  materials on file, and any affidavits show that there is no genuine issue as to any material fact

11  and that the movant is entitled to judgment as a matter of law."  Fed. R. civ. P. 56(c).  An issue is

12  "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find

13  for the nonmoving party, and a dispute is "material" if it could affect the outcome of the suit

14  under the governing law.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 249 (1986).  In

15  evaluating a motion, a court views all facts and draws all inferences in the light most favorable to

16  the nonmoving party.  *Zoslaw v. MCA Distrib. Corp.,* 693 F.2d 870, 883 (9th cir. 1982).

17      The movant bears the burden of showing that there are no genuine issues of material fact.

18  *Id.*  "In order to carry its burden of production, the moving party must either produce evidence

19  negating an essential element of the nonmoving party's claim or defense or show that the

20  nonmoving party does not have enough evidence of an essential element to carry its ultimate

21  burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc..,* 210 F.3d

22  1099, 1102 (9th Cir. 2000).  Once the movant satisfies the requirements of Rule 56, the burden

23  shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine

24  issue for trial."  *Anderson,* 477 U.S. at 256; *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).

Order Granting Defendant's Motion
for Summary Judgment          - 5

1  The nonmoving party "may not rely on denials in the pleadings but must produce specific

2  evidence, through affidavits or admissible discovery material, to show that the dispute exists,"

3  *Bhan v. NME Hosps., Inc.,* 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply

4  show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.*

5  *v. Zenith Radio,* 475 U.S. 574, 586 (1986).

6                                              **DISCUSSION**

7  **Civil Rights Claims:**

8          The Plaintiffs assert that their 42 U.S.C. § 1983 civil rights were violated by the

9  Defendant School District.  Specifically, they assert that the District violated Jordan's Fourth

10 Amendment right to be free from unlawful seizure and the Plaintiffs' Fifth and Fourteenth

11 Amendment due process rights by the failure of the District to contact Jordan's parents prior to

12 police questioning of Jordan.  They also assert violation of Jordan Brinar's Fifth and Fourteenth

13 Amendment due process rights by the District's delay in awarding school credits.

14         The Court notes that the Plaintiffs' Complaint also asserted a due process violation with

15 regard to Jordan's expulsion from Bethel High School.  The Defendants moved to dismiss that

16 portion of the Plaintiffs' due process claim and the Plaintiffs did not address that claim in their

17 response.  The Court also notes that, according to the facts, the parties settled this issue and the

18 undersigned therefore **GRANTS** the Defendant's motion to dismiss that portion of the Plaintiffs'

19 Complaint.

20         In order to prevail on a claim under 42 U.S.C. § 1983, the Plaintiffs must prove (1) the

21 action occurred "under color of state law" and (2) the action resulted in the deprivation of a

22 constitutional right or federal statutory right.  *Jones v. Williams,* 297 F.3d 930,934 (9th Cir.

23 2002).

24

1     **Parental Notification:** As to parental notification, the issue is whether the Constitution

2   requires parental notification by school officials prior to police interrogation of a child, at school,

3   regarding criminal activity that occurred on the school grounds.  The undersigned finds that there

4   is no such Constitutional requirement.

5         In *Wofford v. Evans*, 390 F.3d 3818 (4th Cir. 2004), the mother of a child who was

6   detained and interrogated by law enforcement officers asserted that the child's Fourth

7   Amendment right and the mother's due process rights under the Fourteenth Amendment were

8   violated by the schools failure to provide parental notification.  The Court of Appeals affirmed

9   the lower court's dismissal of these claims.

10        School officials must have the leeway to maintain order on school premises
          and secure a safe environment in which learning can flourish.  Over-constitutionalizing
11        disciplinary procedures can undermine educators' ability to best attain these goals.
          Imposing a rigid duty of parental notification or a per se rule against detentions
12        of a specified duration would eviscerate the ability of administrators to meet
          the remedial exigencies of the moment.  The Constitution does not require such a
13        result.

14  *Wofford, supra* at p. 321.

15        The Court in *Wofford* noted that "[e]ducators must be able to respond effectively to the

16  disciplinary exigencies of the moment.  They must also be able to tailor these responses to the

17  peculiar remedial needs that exist in particular schools.  The Supreme Court has long recognized

18  that educators are best situated to identify those needs and optimize their implementation."  *Id.* at

19  p. 323.

20        The Court finds the same concerns to be at play in this litigation.  School administrators

21  were faced with a very serious safety concern when the explosive device was detonated on

22  school campus.  They rightfully closed the campus and prevented students from leaving the

23  school grounds while law enforcement conducted their investigation.  Upon a sweep of the

24  grounds a second, undetonated device was also found.  As a result of the law enforcement

1  investigation, Jordan Brinar was arrested outside his classroom and subsequently questioned by

2  law enforcement in the assistant principal's office.  Following the questioning he was transported

3  the juvenile court, charged with a criminal offense and entered into a deferred prosecution.  This

4  Court is in no position to criticize the actions taken by the school officials and law enforcement.

5  In addition, no good reasons have been advanced as to why this Court should decline to follow

6  the conclusion of the *Wofford* court.  "With these injunctions in mind, we decline to announce a

7  requirement of parental notification or a ban on detentions of a certain length when school

8  officials are investigating a serious allegation of student misconduct."  *Id.* at p. 323.  This case

9  presents the additional fact that  Jordan Brinar was arrested by law enforcement outside his

10  classroom and that he was, from that point forward, under the control of law enforcement.  To

11  create a Constitutional requirement of parental notification when, in the considered judgment of

12  law enforcement such notification would hamper their investigation, would place school officials

13  in an untenable position.  The Court declines to do that.

14         The Court therefore concludes that the failure to provide parental notification did not

15  violate the Plaintiffs' constitutional rights under the Fourth, Fifth or Fourteenth Amendments.

16  The Court, therefore, **GRANTS** the Defendant's motion to dismiss Plaintiffs claims asserting a

17  Constitutional right to parental notification.

18         **Delay in the Award of Credits:**  The Plaintiffs assert their rights to Due Process under

19  the Fifth and Fourteenth Amendments were violated by the District's delay in awarding Jordan

20  credit for the work he completed while enrolled in the Bethel School District.   The Plaintiffs are

21  not alleging that Jordan was deprived of his property interest in attending school but rather that

22  he was deprived of a property interest "by being unduly denied the awarding of credits for almost

23  two years."  ECF No. 20, p. 5.  Thus, the Plaintiffs are asserting that Jordan Braden has a

24  Constitutionally protected "property interest in timely receiving his education credits."  *Id.* at p.

6. However, the Court notes that the Plaintiffs do not provide any legal authority or analysis to support their conclusion that Jordan had a Constitutionally protected "property interest in timely receiving his education credits."

"The Due Process Clause provides two kinds of protection, procedural due process and substantive due process.  Procedural due process refers to the procedures that the government must follow before it deprives a person of life, liberty, or property.  Substantive due process generally asks whether the government abused its power by arbitrarily depriving a person of *a protected interest,* or by basing the decision on an improper motive."  *Nieshe v. Concrete School District,* 129 Wash. App. 632, 640, 127 P.3d 713 (2005).

Jordan Brinar's § 1983 claim could only concern substantive due process because his argument is based on the allegation of arbitrary and capricious exercise of governmental authority.  However, for there to be a violation of constitutional magnitude, Jordan Brinar must show that he was deprived of a constitutionally protected liberty or property interest.  *Nunez v. City of Los Angeles,* 147 F.3d 867, 871 (9th Cir. 1998).  "A liberty right is implicated " '[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him.' "  *Goss v. Lopez,* 419 U.S. 565, 574, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975)(quoting *Wisconsin v. Constantineau,* 400 U.S. 433, 437, 91 S.Ct. 507, 27 L.Ed.2d 515 (1974).  On the other hand, property rights are not created by the Constitution but rather by "existing rules or understandings that stem from an independent source such as state law."  *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).   Further, substantive due process rights are limited to fundamental rights and liberty interests and have for the most part been accorded to matters relating to marriage, family, procreation and the right to bodily integrity.  *Nunez, supra,* p. 871 n.4 (quoting *Albright v. Oliver,* 510 U.S. 266, 272, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994).

1   After reviewing relevant case law, this Court is unable to find any authority for the

2   proposition that undue delay in awarding credit for work completed while in school is entitled to

3   substantive due process protection.  The Court therefore **GRANTS** the Defendant's motion to

4   dismiss this claim.

5   **State Law Claims:**

6   In their Complaint, the Plaintiffs also asserted claims for (1) intentional and negligent

7   infliction of emotional distress; (2) defamation; (3) false arrest/illegal arrest; and (4) personal

8   injury.

9   **Intentional Infliction of Emotional Distress:**  This state claim is most often referred to

10  as the tort of outrage.  With regard to this type of claim, the trial court must initially determine

11  whether reasonable minds could differ on whether the conduct is sufficiently extreme and

12  outrageous so as to warrant a factual determination by the jury.  *Robel v. Roundup Corp.,* 148

13  Wn.2d 35, 59 P.3d 611 (2002).   The Plaintiffs have failed to present any facts to support a

14  conclusion of outrageous conduct on the part of the School District nor did they make any such

15  argument in their responsive brief.  The Court **GRANTS** the Defendant's motion to dismiss this

16  state law claim.

17  **Negligent Infliction of Emotional Distress**:  It appears that the Plaintiffs base this state

18  law claim on the Defendant's duty to provide an education and their duty to timely award class

19  credit.  The uncontradicted evidence before the Court is that the education was provided –

20  although Jordan did not like the amount of work that was involved.  In addition, there is no

21  constitutional requirement nor has this Court been directed to any state law or regulation relating

22  to when credit must be awarded.  The Plaintiffs have failed, in this case, to establish the

23  existence of a duty that was breached by the Defendants.  The Court, therefore, **GRANTS** the

24

1    Defendant's motion to dismiss the Plaintiffs claims for both intentional and negligent infliction

2    of emotional distress.

3        **Defamation:**  The Defendants are **GRANTED** summary judgment of dismissal with

4    regard to this claim as the Plaintiffs have failed to identify any statement attributable to the

5    Defendant which is in any way defamatory.

6        **False arrest/illegal arrest:**  There is no evidence before the Court which supports a

7    conclusion that Jordan Brinar was falsely or illegally arrested by the Defendant.  The Defendants

8    motion to dismiss this claim is, therefore, **GRANTED.**

9        **Personal injury:**  While the Plaintiffs asserted a claim for personal injury in their

10   Complaint, they do not address this claim in their Response and there are no facts before the

11   Court to support a claim of personal injury which might be independent from the other causes of

12   action already discussed in this Order.  The Defendants motion to dismiss this claim is, therefore,

13   **GRANTED.**

14                              **CONCLUSION**

15        Based on the uncontradicted evidence and the Court's review of the applicable case law,

16   the undersigned concludes that the Defendants are entitled to summary judgment dismissing all

17   of Plaintiffs' claims and their motion to dismiss (ECF No. 17) is **GRANTED** in its entirety.

18   There remaining no triable issues of fact, the trial date presently scheduled for August 29th is

19   stricken.

20        DATED this 31st day of May, 2011.

21

22                              _Karen L. Strombom_
                               Karen L. Strombom
23                             United States Magistrate Judge

24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24